Good morning. Before we begin this morning, I would like to once again, on behalf of the court, welcome our visiting judge, Senior Judge Charles Willie from the Southern District of Iowa. We are delighted to have Judge Willie here with us, both to benefit as far as we're concerned from his great experience in trying cases over an extended period as a district judge and also to help out with the caseload. So with that, we appreciate you being here. Thank you and good morning. We'll hear argument first in number 2007-3171, Teixeira against the Postal Service. Is it the Portuguese pronunciation Teixeira or the Spanish pronunciation Tejera? I believe it's Teixeira. Teixeira. So we'll go with the Portuguese very well. All right. You may begin. Thank you. Good morning, Your Honors. At the please court, my name is Morris Fisher. I'm the attorney for the petitioner in this case of Teixeira v. the  Postal Service. In the case of Teixeira v. the Postal Service, there was judicial error in this case, primarily, of course, because of the Douglas factors were not followed. It's well established that the administrative judges have to follow Douglas factors. The most critical of the Douglas factors in a case called Wynn v. VA 75 MSPR 127 is the seriousness of the offense. And in this case, it's an The seriousness of the offense, as testified to by the agency, at the hearing and at deposition, was the fact that they viewed this as an intentional type of fraud. And there are several quotes that in the record, Richard Sarno, the deciding official, he's talking about what Mr. Shera allegedly did. And that's honesty. It's Postal Service funds. You know, I didn't think she could be a manager any longer. When the administrative judge asked Sarno directly why he believed that this conduct by the petitioner here was so egregious and so serious, he says, and I quote, 197 of the joint appendix. I don't know the exact number, but she did misleading entries into our time and tenant system. She paid someone that didn't deserve to get paid. I think she did it on purpose. She did it for a friend, and it was wrong. Go ahead. My point is, Your Honor, is that the administrative judge, he did a credibility analysis. He found Mr. Shera credible, and he found that she did not do this on purpose, that she didn't follow procedure, but she didn't do this on purpose, that there was no fraud, there was no intent to mislead. And as a result, how can a supervisor say that the reason we don't trust you anymore is because of fraud? You know what it's like? It's like saying there's an IRS agent, and a supervisor says, this guy has been cheating on his taxes for five years. How could I ever trust him? He's fired. But we find out at the hearing, the guy actually didn't cheat for five years. But Mr. Sarno also testified, didn't he, that he would have affected this same penalty, even if the charge of falsification had not been one of the charges? That this is the penalty he would have chosen, regardless of which of these charges were sustained? Your Honor, there is very, very little written record. But didn't he testify to that? He said that, didn't he? I don't know if you say so. I assume he did. But there's very, very little in the record that supports that, that supports that conclusion. The notice... Well, wasn't she... Wait a minute now. Wasn't the originally proposed penalty to remove her? That's right. And then in light of consideration of all of these factors, Mr. Sarno reduced that penalty to one of demotion rather than in the notice to remove, he... And this is on page 385. He sustained both charges. What he says in the notice of removal, the vast majority, the emphasis of what he says as to why he is taking  the case. The clear fact is that time and attendance records were improperly handled intentionally, resulting in an employee receiving paid for hours. He was not entitled. He says in the next paragraph, your actions resulted in the employee being improperly compensated and furthermore, your credibility and honesty have been severely damaged. And then he says in the following paragraph, you did this for, quote, for private gain or giving preferential treatment to any person. When asked if deposition was falsification part of the charge, he says, yes, it was. He says, again, she did it for a friend and on purpose. What do you make of the administrative judge's conclusion that... This, again, goes back to Judge Moore's question, essentially, that the deciding official, Sarno, considered demotion to be appropriate even if he had not attempted to defraud or deceive and then quoting that he did not find that she intentionally tried to defraud the agency. I've read his entire testimony, at least the... I suppose we have the same... Does seem to move about a bit on this question of what level of culpability, but he does say at several points that he did not regard her as having engaged in fraud, which is, Judge Moore points out, was sort of the reason that he decided not to fire her. Well, I think that that conclusion is not supported by not only everything that you've said, but I'd like to turn to the case that was ironically cited by my adversary... Well, let me follow the question before you get to the other case. Do you see a strand of consistency in his responses along the following line, and I'm not sure that... Well, let's just see whether you do. The difference between intentional falsification versus fraudulent conduct, i.e. That she was doing something which she knew was not the right thing to do, but she wasn't doing it in order to defraud the government of money. I think that that is... If he had concluded that, that's an error. First, it's an error in this case, I would argue, because there's testimony that Ms. Teixeira gave that basically she had spoken with her supervisor about what to do in this case, that it had to do with four people that didn't have... Well, there's no question. I don't think you have to argue that very hard, because that's what the administrative judge found, which is that she acted, in effect, incorrectly, perhaps negligently, but not with any kind of bad motive, no mens rea. She followed the advice of her supervisor. She asked her supervisor, what to do. And I think what's interesting, if you look through this whole case, there's not a single sentence devoted to four people were improperly paid, meaning that what Sarno could have said and you notice to remove could have said is, listen, you're enacting a procedure here where it's obvious, you just don't get it, whatever you're doing, you're not doing it right. There were four people here that didn't have the proper 3971, and because of that, we don't trust you. He could have said that. They don't say that. The whole focus here was, this was intent, you did it for a gain, a personal gain. Now, if I could cite this case of Stack versus United States Postal Service, ironically, brought about by my adversary here, I think this case is nearly a parallel to this case. This is a case in which there are two charges. One of them is improper reporting of financial accountability based on an agency allegation that the appellant overstated sales of stamps in an overzealous attempt to compensate for previously unreported sales, meaning there was an intent to defraud, there was an intent to cover something up. She had a bad motive. And number two, bad, she improperly failed to perform the duties, she kept excessive cash in the drawer, she kept a continuous running of the PS form 17, and there was a shortage of $1,913.50. The MSPB board finds that this is upheld, this should be upheld, even though some of the underlying specifications are not sustained. Well, when all of the agency charges are sustained, meaning when that first charge is sustained, which was the improper reporting of financial accountability on purpose, she did that. When that's the case, then the motion to the grade five is appropriate. And arguably, what I think we see from this case is, had that not been the case, had that not been sustained, then I think it's reasonable to conclude that there would have been a different result in this case, that this motion, which drops her some number of grade levels back to her entry level position and gives her the 20, at most 20 hours a week, is just... Why part time? I understand why you might remove her under the circumstances from a supervisory position where she would be managing people's time entry. Whether intentional or negligently in either regard, she's demonstrated something that I feel reasonably could give the government concern over her ability to do this in the future. But why part time? That's one of the things that I did find confusing. Why was part of the demotion not only removing her supervisory authority, but reducing her to part time? Were there no full time positions available? Is this just a matter of they're going to move her into full time when it becomes available, or is it your understanding that she has been demoted to part time, end of story? If I could address that on rebuttal, I could check the record. I don't know off the top  of my head. Yes, she testified that she's averaging 20 hours a week, but they dictate her hours to her. And if I could reserve the four minutes and 10 seconds for rebuttal. Thank you. Thank you. Thank you. May it please the court. The final decision of the MSPB in this case should be affirmed. Counsel, would you agree that our case law, especially in instances where one or more of the charges was not sustained, requires the board to analyze the Douglas factors to ensure that the penalty is still reasonable with regard to the charge that was sustained? Yes, Your Honor. That was done in this case. Okay. Well, I'd like you to turn to the actual opinion of the administrative judge in this case. It's on page 18 of that opinion. The AJ in this case says, I conclude that the deciding official gave adequate consideration to all of the relevant penalty factors. I don't see the AJ performing any independent analysis to ensure that now that he has not sustained one of the charges, that he, in fact, did analyze the Douglas factors. Can you point me in this opinion to where I should conclude that he, the board, analyzed the Douglas factors? Your Honor, if I could direct you to pages 23 and 24 of the appendix. And if you look at the bottom of page 23, the last... The paragraph gets split, but right at the bottom of 23, the administrative judge talks about the Douglas factors and what the deciding official considered in this case. And in particular, he states that what was taken into account in determining the penalty... Where are you reading from? I'm sorry. I'm reading from the bottom of page 23, the second to last line, where it begins... The paragraph begins, the deciding official in this case. Yeah. So it says, in particular, he, meaning Mr. Sarno, not the AJ himself, correct? In particular, he took into account the appellant's 19 years of service, the fact she had never been disciplined before, all of that? That's correct, Your Honor. Does that convey to you that the board independently weighed these factors in light of the reduced penalty? Or does it convey to you that he is affirming the agency's analysis of these factors? To me, Your Honor, the administrative judge here is looking at what the deciding official did, and in doing that, determined that this was correct. And so I think it is an independent analysis. He's saying, okay, I'm looking at the record, and here's what happened. Here's what Mr. Sarno looked at, and here's what I'm gonna look and see if that's right. Here's what I'm gonna look at too. I'm gonna look at the petitioner's 19 years of service. I'm gonna look at the fact that she'd never been disciplined before, and that she was sorry she made a mistake. But I'm also gonna look at the fact that she was a supervisor, supervising no less than five employees at a time, and that she was a finance manager, and that she had liberal control over the agency's finances. What do you... What do you take away from Sarno's testimony as to his conclusion regarding her level of culpability? And the reason I ask this is because I read through his testimony, and I found him to be all over the lot, ranging from a suggestion of fraud to, well, not fraud, but intentional, intentional falsification. And what do you take away from his testimony as his conclusion, ultimately, as to culpability? Your Honor, I think there's a difference between intending to do the action that she did, which was a mistake and in violation of agency policies. That's one of the charges, and the intent to deceive or mislead the record shows that he did not find that she intended to defraud the government. If you look at the supplemental appendix at the end of our brief, on page two, you'll see Mr. Sarno states... The question is asked on line 20, okay, you never made the determination that she had an intent to defraud the government, and he answers, I never came to that conclusion. And it's also stated in the administrative record on page 181, where Mr. Sarno states, where the question is asked, and what do you determine whether or not she had an intent to defraud? And he stated, again, I don't think she intended to defraud the government. She intended to change, change. It's not that she was inserting leave, she changed what was already there in violation of agency procedures of which she had been trained to follow, and she did not follow her supervisor's instructions. If you look at the record, her supervisor instructed her to look and fix the corrections, and when she asked, well, what should I do? He said, well, just follow what has been done before, and what had been done before was that it was leave without pay, and she went in there and changed it. Now, this was at the beginning of the year, and at the beginning of the year, the system will credit an employee with all of the leave that they are going to earn for the year. So, as a supervisor who's been in this position, she should have known that the annual leave that she was inputting, that she was changing, had not yet been earned by the employee. So, you think that Mr. Sarno was saying she didn't defraud the government, she didn't do this in order to enable Mr. Grumling to get more money than he was entitled to, which would be fraud? That's correct, Your Honor. Well, then how do you square that with his testimony, Sarno's testimony that, he says, I don't think she intended to defraud the government, I think she did it on purpose for a friend, this is at A181, made a mistake, and that she paid some, let's see, she did it for a friend, she paid somebody that didn't deserve to get paid, she did it on purpose. That's over onto 180, I guess that's at 197. It sounds like he's saying, and I'm having a hard time understanding what his theory of the case is, that she had this money paid by the government for a friend, she did it intentionally, and as a result, he got more money and ultimately he paid it back, but for the time being, at least he got more money than he was entitled to. What's he saying that that is, if it's not fraud? Fraud requires an intent to deceive or mislead the agency, and I think what Mr. Sarno found was that she did not intend to perhaps defraud the government, but she did intend to take the actions that she did. Well, let me hold you there for a minute. The difference between fraud and larceny, let's say. You're right, it's deceit. Is he saying that she was engaged in larceny, that is to say she was intentionally stealing from the government, but she wasn't doing it by means of subterfuge? Is that what you think he's saying? I think what he's saying is that she did not follow her supervisor's instructions and she did not follow agency's procedures, and what she did was... Well, what about this in order to help a friend? What is that all about? Counsel, could it be that what that is about is in order to help a friend, she was changing the leave status even though he hadn't filed the appropriate paperwork to help a friend, not necessarily because she believed that he wasn't entitled to the money. Could that be it? That could be, Your Honor. It's not in his testimony, but even if that was the case that's still in violation of agency procedures, annual leave is not supposed to be submitted like that unless the proper forms are already filled out. Do you think... Is that how you interpret Mr. Sarno's testimony though? That's what I'm trying to get at, because like Judge Bryce said, I'm troubled. He really is all over the place, flip flopping. It's clear he had a problem with her honesty, and see, he's the one who assessed the penalty. So ultimately, his testimony is important because we're trying to figure out, did he assess the penalty based on a belief of falsification, or did he assess the penalty based on a belief of improper timekeeping? Because if it's the latter, then the penalty should obviously be sustained all the way up, but if he chose this penalty... Look, I've got lots of kids, and when one of them leaves the door open and the dog gets out, if they did it intentionally, I'm a heck of a lot madder at her, and the punishment is worse than if they did it accidentally. The dog gets out in either case. So obviously, the intent part matters. Wouldn't you say it would matter to a penalizing official, an official who's determining what penalty should attach to the action? Yes, Your Honor, and in this case, the deciding official, Mr. Sarno, the penalty he imposed was the penalty for failure to follow timekeeping procedures. You don't think he imposed a penalty because he believed in the falsification charge? No, because... But wait, he sustained... In assessing the penalty, he sustained both charges. So how could he be assessing a penalty based only on one, when he actually sustained both? In his mind, both charges were met. Your Honor, the original penalty proposed was removal. Yeah. And in this case, he mitigated that penalty to allow the petitioner to stay with the Postal Service. I understand that, but didn't he sustain both charges? He did sustain both charges. So clearly, Mr. Sarno believed she... When he assessed her penalty, he believed she was guilty of both improper timekeeping and falsification. He clearly has a whole body of testimony that leads to his questioning of her honesty, which would further support the notion of why he sustained both charges. So I guess, like I said, coming back to being a mother, I'm gonna punish... The kid's gonna sit in a time out a lot longer if what they did, they did intentionally. Why isn't that what happened here? Why should we then sustain the charge ultimate, or the penalty ultimately, when it was based on the falsification? Because he would have imposed, as the administrative judge found, he would have imposed the same penalty even without the fraudulent aspect of it, and that penalty would still have been reasonable. One of the Douglas factors... Is that reasonable to you? Do you really think if you catch somebody stealing money from the government and giving it to their friend intentionally in the way of changing their time, you're gonna penalize them identically to someone who literally mistakenly believes they're entitled to this payment? One of the Douglas... Are you going to penalize someone the same way? One of the Douglas factors that you need to look at is the consistency in the agency's actions in issuing these punishments. If you look at the stack case... Are you gonna penalize someone the same way? They steal money intentionally from the government, or it was just negligence on their part not to realize the person wasn't entitled? I could, because the result is the same. You go through the cashier at the grocery store. It turns out your friend is the cashier. Your friend, intentionally, you give him a 20, he intentionally gives you change for a 50. Wink. Versus he thinks you gave him a 50, and he gives you change for a 20. The result is the same. Is really the penalty should be identical in both of those cases? I think what we need to look at here is we're looking at the decision letter, and we're looking at the testimony of Mr. Song. And yes, he sustained both charges, but in his testimony, he states, I don't know if she really tried... Well, but that's really all correlated, isn't it, to his belief that she didn't do it for her personal gain, she did it for her friend's gain. Either way, he believes that she was aware of her action. Yes, he did find that she was aware of her actions. Let's make sure we're all on the same page here on aware of her actions. Obviously, he was aware. He wasn't sleepwalking through this event. She was aware of what she was doing. The question is, was she aware of the consequences, which is that someone would get paid who wasn't entitled to be paid? Do you think Mr. Sarno concluded that she was aware of the consequences? Setting aside for a moment the technical definition of the term fraud. Of course she was aware. Was aware that this fellow was gonna get paid, even though he wasn't entitled to it. Because... You think, and you think that is consistent with what the input states, leave without pay, that he's not gonna get paid, and that if she changes that to annual leave, he's gonna get paid. She knew that. And she admitted that... So the key question is that he was not entitled to. In other words, was she stealing? That's really stealing. If he wasn't entitled to, and she signed something that gives him money that he's not entitled to, that's theft. In this case... Do you think that both Sarno and the administrative judge effectively upheld a finding of theft? Because I don't think that's what the administrative judge found. I don't think that's what happened here. I think what happened here is the administrative judge did not sustain the first charge, the false occasion charge. The administrative judge did sustain the second charge, that she failed to follow proper timekeeping procedures. And he also found that the penalty that Mr. Sarno, based upon his testimony, that the penalty would have been the same. Well, again, he says, regardless of whether it's fraud, but of course, what he found was intentionally she mishandled records intentionally resulting in an employee receiving pay for hours to which he was not entitled. Don't you think that means she knew full well that he was getting money he wasn't entitled to? That in Mr. Sarno's view? Not necessarily. If you look at... If you look at the stack case... You don't believe... I don't wanna hear about another case. I'm worried about what Mr. Sarno thought when he was making these decisions. So you don't think that he believed when he evaluated the charges and when he assessed the penalty, you don't believe that he thought she gave this money to Mr. Grumbling when she knew he wasn't entitled to it? Because that's the critical issue in this case. I think that the deciding official thought that she intentionally did the actions that she did and that she admitted to doing them and that she admitted there was a mistake. She didn't admit to knowing he wasn't entitled to the money. She admitted to the fact that she didn't research and figure out that he wasn't entitled to the money. I wanna know what you believe Mr. Sarno thought, because his testimony is all over the place. He keeps focusing on honesty. She did it for a friend. She did what for a friend? She gave a friend money he wasn't entitled to? Correct. She gave him annual leave... Knowing he wasn't entitled to that annual leave? Yes. Because the... That's what you believe Mr. Sarno believed? Yes. Okay. Because the system already had in place that he was on leave without pay. And that's what Mr. Sarno found. And she went in and changed it to annual leave. But didn't she testify that there are lots of cases where people don't get their 131 in on time? They have annual leave, they're entitled to their annual leave, they just don't get the paperwork in on time and... Well, we sometimes go ahead and put the annual leave in for them and they file the paperwork on Monday morning. That's a different situation from what we have here and that's in the only the case where nothing has been inputted into the system yet. But didn't the AJ make a credibility finding that he believed her? He believed she did not intentionally do it? He made a finding. He did not sustain the first charge of falsification. He found that there was not sufficient evidence to show that she had intentionally thought to deceive her... Didn't he explicitly say he believed her that she did not intentionally do this? The AJ. Correct, Your Honor, he did not... Okay, so wait. So the AJ explicitly says, I believe you did not intentionally do this. You just stated to me that your perception of Mr. Sarno's testimony is that he believed she did intentionally do it. Intentionally meaning knowingly take the money that was not entitled to someone, knowing they weren't entitled to it, and give them to it, give them it. So Mr. Sarno, when he penalized her, believed in affirming the falsification charge and the AJ believed it shouldn't be. I think we're talking about two different things here. I think we're talking about, did she... Did the agency provide sufficient proof that she intended to deceive or mislead the agency? I think that's one thing. I think the other question is, did she intend to switch the leave without pay for annual leave, knowing that her co worker was going to get paid for leave that he had not yet earned. Yet earned or was not... That he was not entitled to and would not earn. Both. He was not entitled to it and he would not earn it. This was at the beginning of the year. Now, what makes you think that? Because she didn't know he had resigned at the time she did this and the AJ said he believed her. So if she didn't know he resigned, what makes you think she knew he wasn't entitled to this money? Because it was at the beginning of the year. And as the record reflects, the testimony has been provided that the way the system works is that the beginning of the year, the system shows all the annual leave you're gonna earn for the year. But of course, you haven't earned it at the first week of January, you're gonna accumulate it down the road. She's been a supervisor. She's been a supervisor for a while. She's been inputting this... She's been trained in the time keeping procedures. She knew this. Okay, but this is your view of her credibility. The AJ made a determination of her credibility and those are virtually unreviewable for us on appeal. That's true. So if we have to credit the credibility finding of the administrative judge, and it's very difficult for us absent an unbelievably clear case to overturn that, then we have to look at this case with the AJ clearly believed that she did not do this with intent to defraud. She basically advanced him annually. Isn't that a fair summary of what she did? He hadn't earned it, but she credited him with it. And the innocent explanation is that she anticipated that he would earn it and therefore, no harm, no foul. No, no, that's not true, Your Honor, because there are certain procedures... I understand, but she in effect, by hand and inappropriately, but nonetheless, as I understand the way this all sorts out, she said, Okay, I'll put him down for annual leave because it's basically gonna... It's gonna accrue. She wasn't trying to give him money he never would be entitled to. That's ultimately sounds like what you're saying, isn't it? That's not the thing. She changed it. She changed leave without paying to annual leave. She credited him annual leave hours that he had not yet earned, that she did not have the authority to do. That's exactly what I just said. Now, given that that's what she did, isn't the net effect of that for her to have, in effect, advanced him annual leave? Improperly. Well, I understand. I said that. But the question is, is she... Is that the degree of her culpability to say, Okay, let's go ahead and give him some annual leave. He'll earn it down the road, rather than giving him money that he would never be entitled to. I thought that was what your theory was, in effect, once you walk away from the notion of fraud. Well, there are many results from her actions. One, yes, she advanced him annual leave. Yes, he got paid money he wasn't entitled to. There were a number of results from this. I'd like to get back to something Judge Moore had said about credibility determinations. This court does not need to review the credibility determination to sustain the MSPB's decision. In this case, the administrative judge correctly found that there were two charges, and that he did not sustain the first charge, but in sustaining the second charge, that the penalty imposed would have been the same, based upon the testimony of Mr. Sarno, finding that she did not intend to defraud the government. If you look at the Stack case, it's very similar to this case. In that case, they did not find an intent to defraud or mislead, but they did find that she intended to take the actions that she did in violation of agency procedures, and the demotion in that case is exactly the same as the demotion that took place in this case. Was the demotion a part time also? That's correct. It was to a part time clerk position, Your Honor, but all that means is that she... A part time position means that she's not guaranteed the 40 hours, but they can be... They can work up to 40 hours, and in most cases, they do. And the reason why she was placed in that position is, and this, I know, has come before this court several times, the agency has a collective bargaining agreement, where if they place someone in a non union position, they have to place them in the entry level position, and then the agency has an obligation to inform that demoted employee of higher positions and higher pay as they come forth to move them up, because the agency can only move her to open positions, and it's the non union positions that tend to provide plentiful openings. Is that in this record? About the collective bargaining agreement? I don't recall it. The collective bargaining agreement, Your Honor, is available publicly on the website. Thank you. I have a question. If the punishment didn't fit the non crime, what is the result from this court? Does this court simply remand, or does the court make its own decision? Under the law, this court will give great deference to the agency in their penalty determinations, and they won't change that unless they're egregious. Specifically, so it should be remanded if not affirmed. If the court finds that the penalty was... If the court finds that the penalty in this case was so harsh and unconsciously disproportionate to the offense that it amounts to an abuse of discretion, it should be remanded. You were quoting from the case? I was, Your Honor. I'm quoting from the Gonzales case. This is a 1985 decision from this court. Thank you. I see that my time is up. Yeah. We'll... Thank you. We'll hear next on rebuttal from Mr. Fisher. Yes, Your Honors. Just to... First, I looked through and did find that it was a straight demotion to Judge Moore's question about the... Was it part time and how did that work? And that basically that the letter here of decision said, it is my decision, you'll be reduced to the position of part time flexible sales and service associate. That's what I found in the record, and I think that that's what we have to go on here is that the letter could have said, it's gonna be full time and then something happens where we couldn't make it full time and it's down to part time, but they don't say that. The decision is flat out part time. I wanna also address... And that's entry level. That's right. Thank you. That's right. It says... Well, she testified that was the same level that she started at when she entered. Let me ask you a question relating to my exchange with Ms. Connelly. Do you think that it is... If we assume that fraud is off the table... Yes. That is an accurate characterization of her conduct that she in effect, inappropriately, impermissibly, and in an unauthorized manner, but nonetheless, advanced Mr. Grumling of annual leave. I think it's incredible as I was preparing for this oral argument and writing my notes that the very first thing I write here in my thing, basic infraction, if you credited someone annual leave and didn't have it, charge her with essentially falsifying time records for a code of order. What's critical, what's critical is... There, that's dishonest and it does certainly put the government at risk. Of course, if he gets hit by a truck before he accrues the annual leave, then he will have been paid more than he's entitled. Is that what you think she did in this case? In sort of stripping everything away, is that the substance of what she did? Here's what I think happened in this case. And Your Honor asked a very good question when I was first up here, is, is there really a difference in intending to do something wrong or intending to falsify something? And then Judge Moore gave the example, I think, with the store. And I think that there is a difference. And I think the difference goes to rehabilitation. I think what happened here is she didn't follow... Wait, wait. So are you suggesting... I think I know where you're going, maybe I shouldn't cut you off, but are you suggesting that she knew when she gave the money that he truly didn't have the leave, wasn't entitled to the leave? Because my impression of her testimony has always been, I thought he had the leave and this was just a matter of he didn't put in the Rule 31 paperwork. Am I wrong? That's what I thought also. Well, but what is... And I'm sorry, I'm really sorry. What do you make of the record on that point? Because in my mind, this is an important distinction. The record was that, as far as I understood it, is what my client testified to was he was going to earn the leave... Ah, but didn't have it yet. That's right. And she knew that. She knew that, but she assumed that he was going to... That's right. But that's different from saying that I just thought the paperwork was wrong and therefore I corrected it. That's right. That's right. And the judge found that that was not dishonest in what she did. And I think that essentially what the difference here is in the case is that if she doesn't... Again, I think it goes to rehabilitation. And if she intentionally does this for a friend and she falsifies a record, it's much more difficult for somebody like that to be rehabilitated. And the agency's ability to say, we don't trust you, is a lot different than, look, I didn't do it right, I'm sorry, but she apologized. I think that's a difference. Thank you. Thank you very much. The case is submitted.